UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATALIE A. JOHNSON,

                                        Petitioner,

                                                        Case # 21-CV-06710-FPG
v.                                                      DECISION AND ORDER

EILEEN RUSSELL,

                                        Respondent.

## INTRODUCTION

Pursuant to 28 U.S.C. § 2254, petitioner, Natalie A. Johnson brings this *pro se* habeas petition to challenge her state-court convictions for (1) Murder in the Second Degree, in violation of New York Penal Law § 20.00 and § 125.25(1) ("intentional murder") and (2) Felony Murder in the Second Degree, in violation of New York Penal Law § 125.25(3) ("felony murder"). ECF No. 1. The charges arose out of Petitioner's participation in the robbery and murder of Edline Chun in February 2013. *Id.* Respondent Eileen Russell opposes the petition. ECF Nos. 21-2, 28. For the reasons that follow, Ms. Johnson's request for habeas relief is DENIED.

## BACKGROUND

Ms. Johnson's co-defendant, Jerrell Henry, was released from prison in December of 2012 and moved in with his parents at 220 Hazelwood Terrace. Tr. 421.[1] The victim, Edline Chun, lived alone directly next door and on the same side of the street at 226 Hazelwood Terrace. *Id.* At some point, Mr. Henry overheard Ms. Chun tell his mother that her home had been burglarized, but the burglars did not find her cash. Tr. 617-18. In late December 2012, Mr. Henry met and began a relationship with Ms. Johnson and they quickly moved in together at Ms. Johnson's apartment

---

[1] The transcript is docketed at ECF No. 19, 20, 21 and 22 and referenced as "Tr." The Court cites the page numbers listed in the transcript.

located at 698 Frost Avenue in Rochester, after Mr. Henry's parole officer approved Ms. Johnson's residence as an appropriate home because she did not have a felony record and did not have any weapons or alcohol at home. Tr. 409, 421-22, 432. Mr. Henry told Ms. Johnson about Ms. Chun's stash of cash, and together they decided to rob Ms. Chun, expecting to find the cash stash. Tr. 617-18.

In preparation for the robbery, Ms. Johnson and Mr. Henry visited a Wal-Mart store to purchase a large blue storage tote on January 31, 2013. [2] On the day of the robbery, February 3, 2013, Ms. Johnson, Mr. Henry, and Mr. Henry's "cousin named E" drove to Ms. Chun's house. Tr. 618. Cousin "E" remained in the car as Ms. Johnson and Mr. Henry went to the house and tricked Ms. Chun into letting them in by telling her that they brought her some food. Tr. 619-20. Upon entry, Mr. Henry "mushed" Ms. Chun "down to the ground," and forced Ms. Chun to take them upstairs where they bound her and forced her to "call a bank or a card or something like that and try to make her sign some checks."[3] Tr. 620, 679.

After completing the robbery, Mr. Henry was seen carrying a television and other items out of the house in a "box." Tr. 1073. Ms. Johnson, cousin "E" and Mr. Henry drove away and Mr. Henry directed a fourth person, Jachelle Gaines, who was outside during most of the time of the robbery,[4] to drive Ms. Chun's car, a silver Pontiac Vibe, away as well. *Id.* The next day, Ms. Johnson and Mr. Henry struggled to find someone who would cash the check that Ms. Chun wrote, eventually leading to Ms. Johnson calling Citizens Bank pretending to be Ms. Chun and requesting that she be reminded of the PIN to Ms. Chun's debit card. Tr. 835-45, 898-900.

---

[2] The purchase was recorded by the store's video surveillance cameras. People's Exhibit 38.

[3] People's Exhibit 2 is an audio recording of a phone call that Ms. Chun made to her bank (Citizens Bank) during the time of the robbery, during which she informed them of a transfer that she made in the amount of $20,000 from her money market account to the account linked to her debit card. She also informed her bank that she planned on writing a check in the amount of $18,900 and wanted to make sure that there wouldn't be any problems for the recipient of the check when they tried cashing it.

[4] Ms. Gaines arrived later after being summoned to the house by Mr. Henry, but never went into the house.

A few days later, Ms. Johnson called her ex-boyfriend, Gary Brown, "crying and shaken up," to tell him about the robbery. Tr. 615. She told him about how Mr. Henry overheard Ms. Chun talking about her cash. She described that during the course of the robbery, while Mr. Henry collected valuable items to carry out of the house, Ms. Johnson was "consoling" Ms. Chun by stroking her hair and telling her "it was going to be okay." Tr. 620-21. She further explained that she also covered Ms. Chun's mouth with duct tape when someone came to the door and continued to try to soothe her. Tr. 681. Ms. Johnson told Mr. Brown that, at some point, however, Mr. Henry decided to kill. Ms. Johnson recounted to Mr. Brown that Mr. Henry asked Ms. Chun where her gun was, and Ms. Chun told him. Tr. 622-23. Mr. Henry retrieved Ms. Chun's gun, a Mossberg .22 caliber rifle, the bullets, and shot Ms. Chun in the head twice. Tr. 622-23, 778-82. After Mr. Henry murdered Ms. Chun, Ms. Johnson helped Mr. Henry clean up the house. Tr. 623-24. Other than this retelling of what happened, there was no other eyewitness testimony regarding the murder.

The day after the robbery, Ms. Johnson, Mr. Henry, and cousin "E" returned to Ms. Chun's house to continue cleaning and to dispose of Ms. Chun's body. Tr. 625. They used a "bin" to carry her body out of the house and dropped her body in Tryon Park. *Id.* Two days later, a county worker went to Tryon Park to perform a weekly inspection. After finding a tote on the hillside and a body in the creek, he notified the police. Tr. 448-51, 453-55, 457-58, 686. The body was identified as belonging to Ms. Chun. Her wrists and ankles had been bound with duct tape and she had sustained two fatal gunshot wounds to the head. The medical examiner provided police with bullet fragments that had lodged in Ms. Chun's skull. Tr. 460-67, 470, 472-82, 532, 535-38, 545-46, 548-49, 551, 1182.

The Rochester Police Department identified Mr. Henry as a suspect in the murder the next day and set out to find him. Mr. Henry was found in the parking lot of a market on West Avenue in Ms. Chun's silver Pontiac Vibe with a woman named Elise Harris. Tr. 685-88. On Mr. Henry's person, the police recovered two mobile phones, Ms. Chun's car keys on a key chain bearing her identification, and over $10,000 in cash. Tr. 721-30. In the silver Pontiac Vibe, the police found Ms. Chun's Mossberg .22 caliber rifle wrapped in a Hello Kitty blanket. Tr. 749. The gun was loaded with a single unspent round. Tr. 751. Subsequent ballistics analysis established that the gun was operable and contained a live round. Ballistics examination also revealed that the gun could have fired the bullets whose fragments were recovered from Chun's skull. Tr. 769-72, 774-77.

Police also executed a search warrant at Ms. Johnson's house where they seized the lid for the tote that was recovered from Tryon Park. Tr. 1021. Police also found paperwork from Citizens Bank, a clear latex glove with jewelry in the finger, loose latex gloves in the bedroom, and a box of latex gloves in the bathroom. Tr. 1025-26.

Ms. Johnson fled to Queens County where she was arrested on February 28, 2013. In March 2013, she was indicted on charges of (1) Intentional Murder in the Second Degree, in violation of New York Penal Law § 20.00 and § 125.25(1) and (2) Felony Murder in the Second Degree, in violation of New York Penal Law § 125.25(3). S.R. at 71-72.[5]

Jury selection took place on October 15 and 16, 2013. After the parties questioned the first panel of prospective jurors, and Ms. Johnson consulted with her counsel, the attorneys and trial judge met at a sidebar. During the sidebar conference, the court dismissed a prospective juror who could not serve due to a scheduling conflict, and the parties selected three jurors, who were then

---

[5] The State Court Record is docketed at ECF No. 18 and referenced as "S.R."  The Court cites the page numbers listed in the record.

sworn in. Tr. 93-97. Ms. Johnson was not present for this sidebar. The court adjourned the proceedings until the next day. Tr. 98.

The next morning, in the presence of Ms. Johnson, her attorney, and the prosecutor, the court explained that even though the court did not believe that Ms. Johnson had been required to be present for the previous day's sidebar conference, and even though Ms. Johnson had the opportunity to consult with her lawyer in order to inform his actions during the sidebar when the jurors were selected and had not objected to seating those jurors, the court would agree to dismiss any or all of the selected jurors if Ms. Johnson wished. Tr. 100-07.

Ms. Johnson's attorney acknowledged that he had not objected to the seating of the three jurors. Tr. 106. However, counsel stated that he did not "know if there was a legal error committed or not" and would not "waive any legal error." Tr. 107. After some back and forth among the parties, defense counsel stated that if Ms. Johnson's absence from the sidebar was "legal error," the three sworn jurors "should be dismissed." Tr. 111.

The prosecutor stated that because the parties had been unable to "get to the bottom of the issue," the three sworn jurors should be dismissed, and jury selection should "start over." Tr. 112. The court responded that notwithstanding its belief that no error had transpired, it would discharge the sworn jurors. Tr. 112. Defense counsel stated that the jurors should not be dismissed "in the absence of a statement by the court or the prosecution [that] legal error was, in fact, committed in not allowing [Ms. Johnson] to be present at the sidebar." Tr. 114-15.

The court dismissed the sworn jurors and began jury selection "anew," thus restoring all previously used peremptory challenges to both sides. Tr. 115-16.

Once the final jury was selected and sworn, it heard the case against Ms. Johnson between October 17 and October 28, 2013, in New York State Supreme Court, Monroe County (Affronti,

J.). The jury found Ms. Johnson guilty of intentional murder and felony murder. Tr. 1371-75. On

December 18, 2013, the court sentenced Ms. Johnson to a prison term of 25 years to life. S.R. 23.

Ms. Johnson, through counsel and in a *pro se* supplemental brief, appealed her conviction

on the grounds that, *inter alia*: (1) the proof of guilt on both counts was legally insufficient; (2)

she was deprived of a fair trial where, in her absence, a prospective juror was discharged and three

jurors were chosen; (3) she was deprived of a fair trial where the court dismissed all jurors (because

they had been chosen in her absence) and restarted jury selection; and (4) defense counsel was

ineffective because he failed to: (a) object when three sworn jurors were dismissed; (b) elicit that

a prosecution witness, Jachelle Gaines, had been granted immunity; and (c) request an affirmative

defense to the felony murder charge. S.R. 1-64, 117-54.

The Appellate Division unanimously affirmed the conviction. *People v. Johnson*, 184

A.D.3d 1102 (4th Dep't 2020). The court rejected Ms. Johnson's claim that Supreme Court

committed reversible error when it discharged three sworn jurors, finding that "the court granted

the remedy that defense counsel impliedly sought and, because defense counsel failed to object to

that remedy or move for a mistrial, that remedy must be deemed to have corrected the error to

defendant's satisfaction." *Id.* at 1103.

The court found that Ms. Johnson failed to preserve her challenge to the sufficiency of the

proof of guilt for felony murder, and further found that the claim had no merit. *Id.* at 1104. The

court denied as meritless Ms. Johnson's claim that there was insufficient proof that she committed

intentional murder. *Id.* at 1104-05.

The court further held that counsel could not have been ineffective for failing to request an

affirmative defense as to the felony murder count since, in its view, such an instruction was not

supported by the evidence. *Id.* at 1105. Finally, the court found that counsel had adequately cross-examined Gaines. *Id.*

Ms. Johnson sought leave to appeal to the New York Court of Appeals on all issues raised in the Appellate Division; that application was denied on November 18, 2020. S.R. 202-09, 213.

## LEGAL STANDARD

28 U.S.C. § 2254 allows a petitioner to challenge her imprisonment from a state criminal judgment on the ground that it is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner raises a claim that was adjudicated in state-court proceedings, she is only entitled to relief if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1), (2).

"A principle is 'clearly established Federal law' for § 2254(d)(1) purposes only when it is embodied in a Supreme Court holding, framed at the appropriate level of generality." *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks, brackets, and citations omitted). "A state court decision is 'contrary to' such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Id.* (internal quotation marks omitted). "An unreasonable application occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case, so that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and ellipses omitted). In analyzing a habeas claim, "[f]ederal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with clear and convincing evidence." *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 318 (N.D.N.Y. 2018) (internal quotation marks omitted). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Id.*

Where, as here, the petitioner is proceeding *pro se*, the district court must read the pleadings liberally and construe them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## DISCUSSION

Ms. Johnson contests her convictions on five grounds. First, there were several constitutional errors during the jury selection process. ECF No. 1 at 16. Second, there was insufficient evidence to convict her of both charges. *Id.* at 19. Third, defense counsel provided ineffective assistance of counsel because he failed to preserve an alleged legal error during the jury selection process and also because he failed to object to the dismissal of certain jurors. *Id.* at 20-22. Fourth, defense counsel provided ineffective assistance of counsel because he failed to raise the affirmative defense to felony murder. *Id.* at 22. Fifth, defense counsel failed to provide effective assistance of counsel when he failed to elicit from a prosecution witness that she had received immunity in exchange for her testimony. *Id.* at 23-4. The Court examines each argument in turn.

## I.   Jury Selection

Ms. Johnson brings two conflicting claims relating to the dismissal of three sworn jurors after the first day of the jury selection process. Ms. Johnson's first claim is that those three jurors

were selected in violation of her right "to be present in [her] own person whenever [her] presence has a relation, reasonably substantial, to the fullness of [her] opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934) (internal quotations omitted).[6] Contemporaneously and through defense counsel, Ms. Johnson raised an objection to this potential legal error at the trial court level. Following an *in camera* conference, where this potential legal error was debated, the trial judge dismissed those three jurors and started the jury selection process "anew," creating the basis for Ms. Johnson's second claim. Ms. Johnson's second claim is that the dismissal of those three sworn jurors violated her right "to have [her] trial completed by a particular tribunal," implicating her right not to be twice put in jeopardy under the Fifth Amendment of the United States Constitution—double jeopardy. *United States v. Goldstein*, 479 F.2d 1061, 1068 (2d Cir. 1973).

At issue in the first claim is the fact that Ms. Johnson was not present at the bench during a sidebar where peremptory challenges were exercised during the first day of the jury selection process. To support her claim, Ms. Johnson invokes the deeply rooted principle of criminal procedure that "nothing shall be done in the absence of the prisoner," *Lewis v. United States*, 146 U.S. 370, 372 (1892), which is a principle arising out of the Confrontation Clause of the Sixth Amendment. *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (*per curiam*). This principle gives rise to a criminal defendant's right to be present, whenever such presence "has a relation, reasonably substantial, to the fullness of [her] opportunity to defend against the charge." *Snyder*, 291 U.S. at 106. However, this right is not boundless in its reach. Indeed, presence is not guaranteed where it "would be useless, or the benefit but a shadow." *Id.* at 106-107. Thus, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical

---

[6] In *Malloy v. Hogan*, the Supreme Court extended this constitutional protection to proceedings in state courts. 378 U.S. 1 (1964).

to its outcome if [her] presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).

The Supreme Court has consistently ruled that "*voir dire*"—the pre-screening of prospective jurors—"[is] a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present." *Gomez v. United States*, 490 U.S. 858, 873 (1989). However, the right to be present does not extend to "the in-chambers exercise of … juror challenges," where the defendant was present "during the questioning of jurors," and where the defendant had "opportunities to confer with counsel, and the formal announcement of the stricken and seated jurors [was made] in open court." *Cohen v. Senkowski*, 290 F.3d 485, 490 (2d Cir. 2002).

Here, Ms. Johnson was present during all critical moments of the jury selection process. She was present during the sidebar questioning of potential jurors and was given the opportunity to confer with her counsel privately for twelve minutes to inform his exercise of the peremptory challenges. Tr. 92-3. The fact that Ms. Johnson was not present during the actual exercise of the peremptory challenges at the sidebar does not amount to a constitutional violation because, consistent with the ruling in *Cohen v. Senkowski*, a formal announcement of the jurors who had been stricken and seated was subsequently made in open court. Tr. 97.

Even if Ms. Johnson's absence during the sidebar conference amounted to a constitutional violation, Ms. Johnson has not shown, and would not be able to show, that such absence prejudiced her during her trial. Here, the alleged error is less than harmless, since the alleged error was remedied in real time by the dismissal of the jurors who were selected in the manner that Ms. Johnson objected to. Tr. 115-16. Further, the trial judge restored to all parties all peremptory challenges that had previously been used. *Id.*

After obtaining the "remedy that defense counsel impliedly sought,"[7] Ms. Johnson next objects to the remedy itself as a violation of her right "to have [her] trial completed by a particular tribunal." *Goldstein*, 479 F.2d at 1068. In other words, Ms. Johnson asserts a claim of double jeopardy. Ms. Johnson alleges that once the jurors had been sworn, even pursuant to a sidebar conference that she objected to, the judge could not dismiss them over defense counsel's objection. ECF No. 1 at 17.

Ms. Johnson's claim must fail because defense counsel did not in fact object. Instead, defense counsel encouraged their dismissal by stating, "in the event there is legal error, they should all be dismissed." Tr. 111. Further, defense counsel repeatedly denied that he and Ms. Johnson were satisfied with the selected jurors.[8] As a result, the trial judge was left with no choice but to dismiss the jurors because the "Court ha[d] exercised every possible discretionary alternative available" to satisfy defense counsel. *Id.* Defense counsel's only objection is that the trial court did so "in the absence of any determination legal error ha[d] been committed." Tr. 113. Because the trial court did not make a determination of legal error, Ms. Johnson cites to *United States v. Perez*, *infra*, asserting that the trial court failed to show that there was "manifest necessity" for dismissing the jurors and that such failure violated her right not to be twice put in jeopardy.

"The law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. 579, 580 (1824). Absent a showing of "manifest necessity," the court may not dismiss a sworn jury. *See generally Crist v. Bretz*, 437 U.S. 28 (1978). However, the obligation

---

[7] *Johnson*, 184 A.D.3d at 1103.
[8] Tr. 109-10 (Court: "I'm also going to infer…that the three jurors are satisfactory." Defense Counsel: "I don't think that would be a correct assumption.").

to find "manifest necessity" prior to dismissing jurors only arises after jeopardy attaches and jeopardy had not yet attached at the time the trial judge dismissed the jurors in Ms. Johnson's case.

"The federal rule as to when jeopardy attaches in a jury trial is . . . a settled part of federal constitutional law." *Crist v. Bretz*, 437 U.S. 28, 37–38 (1978). In *Crist*, the Supreme Court held that jeopardy attaches once the full jury is seated, declaring as unconstitutional a state law that precluded the attachment of jeopardy until after the first witness is sworn in. *Id.* The ruling in *Crist* made clear just how early jeopardy attaches, but in a non-binding discussion in dissent, Justice Powell also made clear that the Court's ruling created "no basis for a double jeopardy claim . . . before the whole panel is sworn." *Crist v. Bretz*, 437 U.S. 28, 51 (1978) (Powell, J. dissenting). Since that ruling, Courts have proceeded on that basis, that jeopardy attaches only after the full jury is sworn. *See, e.g., Thomas v. Scully*, 854 F. Supp. 944, 961 (E.D.N.Y. 1994) ("[J]eopardy does not attach in a jury trial until the entire jury has been empaneled and sworn."). The Supreme Court later endorsed this view in *Martinez v. Illinois*, when it said that the prosecution "could [have] move[d] to dismiss its case before the jury was sworn . . . [and] the Double Jeopardy Clause would not have barred it from recharging [defendant]." 571 U.S. 833, 843 (2014). Accordingly, Ms. Johnson may not raise a claim of double jeopardy for the dismissal of the jurors absent a determination of legal error, following her counsel's antagonistically implied request, because jeopardy had not yet attached.

Because this Court finds that no constitutional violation occurred at any point during the jury selection process, Ms. Johnson is not entitled to habeas relief on the basis of her claims relating to the jury selection process.

## II.    Insufficiency of the Evidence

Ms. Johnson next claims that she was deprived of due process of law based on the prosecution's failure to prove through legally sufficient evidence every element of the crime of intentional murder in the second degree beyond a reasonable doubt. Specifically, Ms. Johnson alleges that the prosecution failed to prove that Ms. Johnson possessed the requisite intent to cause the death of Edline Chun. Ms. Johnson also challenges her conviction for felony murder, claiming that such conviction was based on legally insufficient evidence.

Habeas relief based on insufficiency of the evidence should only be granted if, in reviewing the record evidence in the light most favorable to the prosecution, the federal district court determines that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt," with respect to every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. A "mere modicum" of evidence alone "could not…support a conviction beyond a reasonable doubt." *Id.* at 320. "When conducting a review for sufficiency of the evidence, federal courts must look to state law for the substantive elements of the criminal offense." *Sanders v. Fischer*, No. 16-CV-4832, 2021 WL 3373127, at *9 (E.D.N.Y. Aug. 3, 2021) (internal quotation marks omitted).

### 1. Felony Murder

Ms. Johnson's challenge to the felony murder conviction based on legal insufficiency is procedurally defaulted. "This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground," whether substantive or procedural, "that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). New York's criminal procedure law requires that a "motion

to dismiss for insufficient evidence . . . be 'specifically directed' at the alleged error" in order to preserve the issue for appeal. *People v. Gray*, 86 N.Y.2d 10, 19 (1995). At trial, defense counsel did not make a motion to dismiss "specifically directed" at legal insufficiency for conviction for felony murder. Accordingly, on direct appeal, the Appellate Division ruled that Ms. Johnson "failed to preserve for our review her contention that the conviction of felony murder is not supported by legally sufficient evidence." *People v. Johnson*, 184 A.D.3d 1102, 1104 (2020). This disposition of Ms. Johnson's claim for legal insufficiency rested on independent and adequate state procedural grounds. Therefore, Ms. Johnson is "procedurally barred from raising [her] claim in federal habeas proceedings." *Dixon v. Miller*, 293 F.3d 74, 80 (2d Cir. 2002).

Ms. Johnson may overcome the procedural default if she shows cause "for [her] default and prejudice as a result of the alleged violation of federal law, or [she] demonstrates a fundamental miscarriage of justice." *DeBerry v. Portuondo*, 403 F.3d 57, 64 (2d Cir. 2005). Ms. Johnson has not addressed the procedural default of her claim of legal insufficiency regarding her conviction for felony murder. Accordingly, this Court may not address those claims. *Liggan v. Senkowski*, 652 F. Appx 41, 43 (2d Cir. 2016) ("Procedurally barred claims may be addressed only if the petitioner demonstrates cause for the default and resulting prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice.").  In any case, for the reasons stated in Section III.3., *infra*, Ms. Johnson's claim would be denied.

### 2. *Intentional Murder*

Ms. Johnson was convicted of intentional murder in the second degree under Section 125.25(1) of the New York Penal Law pursuant to a theory of accessorial liability under Section 20.00 thereof. Under New York law, a person is guilty of intentional murder in the second degree as an accomplice if "when, acting with the mental culpability required for the commission" of

intentional murder, she "solicits, requests, commands, importunes, or intentionally aids" the principal in the murder.  N.Y. Penal Law § 20.00. The mental culpability required for the commission of intentional murder in the second degree is the "intent to cause the death of another person."  N.Y. Penal Law § 125.25(1).

When culpability is premised on accomplice liability, the accomplice must share the intent of the principal actor and have taken some action that aided the principal. *People v. Bennett*, 160 A.D.2d 949, 951 (2d Dep't 1990). This is true even if the principal commits a murder in the course of some other felonious conduct in which the principal and accomplice are jointly engaged. *Cf. People v. Stevens*, 153 A.D.2d 768, 770 (3d Dep't 1989) ("[T]he intent of one codefendant may not be imputed to the others."); *People v. Cruz*, 291 A.D.2d 1, 6-7 (1st Dep't 2002). The prosecution must present sufficient evidence of a "community of purpose." *People v. La Belle*, 18 N.Y.2d 405, 412 (1966); *see also People v. McDonald*, 172 A.D.3d 1900, 1902 (2019) (the prosecution must "offer evidence from which the jury could rationally exclude the possibility that the defendant was without knowledge of the perpetrator's intent."). In other words, the prosecution must show a knowing participation "even after [the companion's intentions [become] clear." *People v. Allah*, 71 N.Y.2d 830, 832 (1988).

The evidence presented at trial shows that a few days before the robbery, Ms. Johnson helped her boyfriend and co-conspirator in the robbery, Mr. Henry, purchase a large blue tote from Wal-Mart, which was later used to dispose of Ms. Chun's body. On the day of the robbery, she helped trick Ms. Chun into granting her and Mr. Henry permission to enter Ms. Chun's home. Once inside the home, Mr. Henry "mushed" Ms. Chun down to the ground and Ms. Johnson helped bind Ms. Chun with duct tape.  The pair forced Ms. Chun to call her bank and sign some checks. At one point during the robbery, someone knocked on the door and Ms. Johnson gagged Ms. Chun

with duct tape. Toward the end of the robbery, Mr. Henry asked Ms. Chun where her gun was. After she told him, Mr. Henry retrieved the gun from its location and the bullets from a different drawer. He shot Ms. Chun once and then went to the door. He returned from the door and shot Ms. Chun a second time. After the killing, Ms. Johnson helped to clean up the crime scene and made continued attempts to withdraw money from Ms. Chun's bank accounts.

On appeal and in her brief to this Court, Ms. Johnson argues that mere presence at the scene of the crime is insufficient to convict for intentional murder pursuant to a theory of accessorial liability. See *People v. McDonald*, 172 A.D.3d 1900, 1902 (4th Dep't 2019) (stating that the prosecution must "offer evidence from which the jury could rationally exclude the possibility that the defendant was without knowledge of the perpetrator's intent"). She further argues that the prosecution failed to prove that she knew about Ms. Chun's gun prior to entering her house and therefore did not sufficiently prove the element of intent. Neither of these arguments are sufficient to undermine the sufficiency of the evidence presented at trial and the rational conclusion reached by the jury that Ms. Johnson possessed the requisite intent to kill when aiding Mr. Henry.

Regarding Ms. Johnson's first argument, she was not merely present at the scene of the crime, she was an active participant in the robbery, which quickly turned violent.  Upon entering the house, Mr. Henry violently "mushed" Ms. Chun to the ground, and Ms. Johnson proceeded to bind her with duct tape and seal her mouth shut. These steps that Ms. Johnson took, immediately after Mr. Henry had already demonstrated his intention to harm Ms. Chun, disclose a community of purpose with Mr. Henry.

While Ms. Johnson asserts that the prosecution did not provide any direct evidence that she had knowledge of Ms. Chun's gun, Ms. Johnson misses an opportunity to directly deny such knowledge in her petition. Nevertheless, even absent direct evidence that Ms. Johnson knew about

Ms. Chun's gun prior to commencing the robbery, the circumstantial evidence was sufficient for a rational jury to conclude that she did know about the gun because Mr. Henry knew about it. Since Mr. Henry told Ms. Johnson about Ms. Chun's cash, it is rational to conclude that he also told her about the gun as well. With a rational basis for believing Ms. Johnson knew about the gun, it is reasonable to conclude that she possessed the requisite intent to kill upon entering the house and participating in the robbery. See *People v. Maldonado*, 126 A.D.2d 670, 672 (2d Dep't 1987) (upholding a conviction of accessorial liability for murder because the defendant was inside of the car with a shotgun, and because a shotgun is not easily concealable, the judge permitted the jury to infer that the defendant had knowledge of the shotgun, and from that knowledge, in inference of intent to kill).

Even if Ms. Johnson could successfully demonstrate that she had no idea about the gun upon entering the house, she cannot deny knowing about the gun from the moment Mr. Henry asked Ms. Chun to tell him where it was kept. At that moment, there can be no doubt that Mr. Henry's intentions were not merely violent, but deadly, and Ms. Johnson continued to assist in the act, just as she had when Mr. Henry had first used violent force against Ms. Chun. After Ms. Chun informed Mr. Henry of the gun's location, he retrieved the gun and then also retrieved the bullets from a separate location. The evidence suggests that Ms. Johnson remained with Ms. Chun during this time and continued to assist Mr. Henry with the robbery and clean-up after he shot and killed Ms. Chun.

Moreover, the blue tote that Ms. Johnson purchased with Mr. Henry days before the murder was used to carry Ms. Chun's body away after they cleaned up the crime scene. One reasonable inference would be that the blue tote was intended to aid only in the robbery. However, because Ms. Johnson and Mr. Henry entered the house seeking only to find a stash of cash, another

reasonable inference would be that the blue tote was intended for Ms. Chun's body from the moment it was purchased. Therefore, Ms. Johnson's assistance in purchasing the tote also supports the jury's conclusion that she intended to assist Mr. Henry in Ms. Chun's murder.

Finally, as the State points out, Ms. Johnson's intent can also be inferred from the fact that she, like Mr. Henry, had not worn any face covering to protect her identity—giving her a plausible motive to assist in Ms. Chun's murder.

Viewing the evidence in the light most favorable to the prosecution, this Court finds that there was legally sufficient evidence to support the conviction for intentional murder in the second degree.

**III.    Ineffective Assistance of Counsel**

To make a claim for ineffective assistance of counsel, Ms. Johnson must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient where it falls below an objective standard of reasonableness. *Id.* at 688. Nevertheless, "[j]udicial scrutiny of counsel's performance must be highly deferential," presuming that the challenged action might be considered sound trial strategy. *Id.* at 689-90; s*ee also Boyland v. Artus*, 734 F. App'x 18, 20 (2d Cir. 2018) (summary order) ("At the first step, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). A deficient performance is prejudicial where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 697.

*1.   Performance During Jury Selection*

Ms. Johnson raises three objections to her defense counsel's performance during the jury selection process, arguing that, together, those deficiencies in performance deprived her of her right to the effective assistance of counsel. First, Ms. Johnson claims that defense counsel failed to "adequately address the fact that the court failed to adhere to the criteria set forth under CPL 270.35," when the court dismissed a prospective juror who had a death in the family. ECF No. 1 at 20. Next, Ms. Johnson asserts that defense counsel did not properly preserve "legal error regarding the dismissal of three sworn jurors." *Id.* at 21. Finally, Ms. Johnson attacks defense counsel's failure to request a mistrial after the dismissal of the three jurors. *Id.*

Ms. Johnson's first allegation of deficiency relates to the dismissal of potential juror, D.S. Tr. 93. At a sidebar colloquy, the judge noted that this potential juror had a death in the family and that he would discharge her, asking the attorneys if they had any objection. *Id.* Neither party objected, and the potential juror was discharged. *Id.* Ms. Johnson claims that the judge should have done a searching inquiry pursuant to N.Y. C.P.L. § 270.35 and that defense counsel should have moved the court to do so. However, Ms. Johnson's argument is inapposite. Pursuant to its own terms, N.Y. C.P.L. § 270.35 only applies after the full jury has been sworn. The discharge at issue took place prior to completion of jury selection and D.S. had never been selected or sworn, the judge was not required to follow N.Y. C.P.L. § 270.35 at that time, so counsel's failure to so move was not objectively unreasonable. On the contrary, a motion by counsel on this issue would have been received as frivolous, and therefore, it was completely reasonable not to do so.

Ms. Johnson's assertion regarding defense counsel's failure to properly preserve legal error regarding the dismissal of three sworn jurors is also without merit. As discussed, *supra*, at the time the three jurors were dismissed, no constitutional violation had occurred because jeopardy had not attached. Accordingly, there was no legal error for defense counsel to preserve by objecting to

their dismissal. Even if defense counsel had objected, which the record shows he did not, it is not likely that the outcome of the proceedings would have been different. After their dismissal, the court started the jury selection process anew, restoring to the defense all previously exercised peremptory challenges. Ms. Johnson was able to recommence jury selection unprejudiced by the dismissal of those jurors.

Ms. Johnson's final claim regarding defense counsel's failure to request a mistrial is equally meritless. Jeopardy had not attached at the time the jurors were dismissed, so no mistrial could be requested. Since no mistrial could be requested, defense counsel's failure to so request cannot be considered deficient. Indeed, a request for a mistrial at that point would have been considered frivolous and objectively unreasonable.

Because Ms. Johnson has not shown that defense counsel made any actual error during the jury selection process, the Court finds that defense counsel's performance during the jury selection process was not deficient. Accordingly, Ms. Johnson's claim for ineffective assistance of counsel in jury selection must fail.

### 2.  Failure to Adequately Cross-Examine a Specific Prosecution Witness

Ms. Johnson claims that defense counsel's cross-examination of a prosecution witness was inadequate because he failed to elicit testimony from the witness regarding the fact that she was offered immunity in exchange for her testimony. ECF No. 1 at 23. Ms. Johnson bears the burden of overcoming "the presumption that, under the circumstances, [counsel's] challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "The presumption operates with particular force when the conduct at issue relates to counsel's conduct of cross-examination. Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature and generally will not support an ineffective assistance claim."

*Love v. McCray*, 165 F. App'x 48, 49–50 (2d Cir. 2006) (summary order) (quoting *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir.2002)).

Here, the record establishes that defense counsel conducted a vigorous cross-examination of this prosecution witness by highlighting numerous inconsistencies between that witness's testimony on direct examination, her testimony before the grand jury, and her statements to police. Even without eliciting information about the offer of immunity, the cross-examination was sufficient to undermine the witness's credibility and the jury ultimately resolved any issue of credibility exposed by this vigorous cross-examination. Ms. Johnson's assertion that eliciting information about this witness's immunity would have further undermined the witness's credibility, potentially altering how the jury might have resolved this witness's credibility is mere speculation. "Speculation that a more vigorous cross-examination might have [undermined the credibility of a witness] does not establish ineffectiveness of counsel." *People v. Lozada*, 164 A.D.3d 1626, 1628 (4th Dep't 2018).

   *3.  Failure to Raise Affirmative Defense to Felony Murder*

Finally, Ms. Johnson claims that her Sixth Amendment right to effective assistance of counsel was violated due to her defense counsel's failure to raise the affirmative defense to felony murder. To support a conviction for felony murder, the prosecution had the burden of proving that Ms. Johnson committed a robbery and "in furtherance of such crime … another participant … cause[d] the death of a person other than one of the participants." N.Y. Penal Law § 125.25(3). It is an affirmative defense to a charge of felony murder that the defendant:

> (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
> (b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious

> physical injury and of a sort not ordinarily carried in public places
> by law-abiding persons; and
>
> > (c) Had no reasonable ground to believe that any other
> > participant was armed with such a weapon, instrument, article or
> > substance; and
>
> > (d) Had no reasonable ground to believe that any other
> > participant intended to engage in conduct likely to result in death or
> > serious physical injury.

N.Y. Penal Law § 125.25(3).

Assuming a defendant has a reasonable basis for satisfying the essential elements of the affirmative defense, counsel's failure to request a charge to the jury on the affirmative defense will not be found to be defective if there is a reasonable strategic reason for counsel's omission. *Strickland*, 466 U.S. at 690. One such strategic circumstance arises where a defendant is charged with both felony murder and the underlying felony simultaneously. In such a case, counsel may choose not to raise the affirmative defense in order to avoid inviting the jury to convict for the underlying felony. *See Lopez v. Lape*, No. 10 CIV. 397, 2010 WL 3219308, at *4 (S.D.N.Y. Aug. 13, 2010) (Because counsel told his client, "[i]f we look for the charge down, you are in turn inviting the jury to convict you of the robbery," the federal court agreed with state court's determination that "the decision not to pursue an affirmative defense was a strategic choice").

However, where the felony murder charge arises out of underlying felony conduct for which the defendant has not been charged, "there is no tactical or strategic advantage to avoiding the affirmative defense to felony murder." *Georgiou v. Ercole*, No. 08-CV-2093, 2009 WL 36815, at *4 (E.D.N.Y. Jan. 6, 2009) (quoting *People v. Georgiou*, 38 A.D.3d 155, 160 (2007)). In *People v. Georgiou*, the Appellate Division reasoned as follows:

> "counsel's election to argue to the jury that the defendant did not
> share [co-defendant's] intent to rob the victim, under the
> circumstances of this case, was inexplicable and offered the
> defendant no tactical or strategic advantage. First, the defendant was
> never in jeopardy of conviction for the underlying robbery. The

statute of limitations had run on that charge and therefore it was not contained in the indictment. Thus, the affirmative defense alone, if successful, would have served as a complete defense, relieving the defendant of liability for felony murder as well as for any accessorial liability in the reckless homicide underlying the depraved indifference murder count (*see Matter of Anthony M.*, 63 NY2d 270, 283 [1984]). Second, counsel's argument that the defendant's statement was true and that it showed he did not share Chesney's intent to rob the victim flew directly in the face of the statement itself which, as read to the jury, began: "On that day in the afternoon *me and Dave*, male white, 40's, balding on top with long hair in the back, robbed an old white lady" (emphasis added). Thus, there was no advantage in arguing that the defendant did not share the intent to rob the victim, and the decision not to pursue the affirmative defense gave up a complete defense to no discernible benefit." *Id.* at 160.

In many relevant respects, Ms. Johnson's case is indistinguishable from the facts of *People v. Georgiou* concerning defense counsel's failure to raise the affirmative defense. First, this trial did not put Ms. Johnson at jeopardy for robbery. The indictment did not contain a robbery charge, without which the jury could never have returned a verdict of guilty for robbery. *See People v. Berzups*, 49 N.Y.2d 417, 427 (1980) ("[W]e hold that the underlying felony of the felony murder charge [is] not a lesser included offense that merge[s] in the conviction for which it [is] the predicate."). Second, although defense counsel pursued a strategy of completely denying Ms. Johnson's participation in the robbery, such a strategy "flew directly in the face" of the overwhelming evidence of her involvement in the robbery and clean-up. "Thus, there was no advantage in arguing that [Ms. Johnson] did not share the intent to rob the victim, and the decision not to pursue the affirmative defense gave up a complete defense to no discernible benefit" whatsoever. *Georgiou*, 38 A.D.3d at 160. Lacking any strategic basis for his choice, defense counsel's failure to raise the affirmative defense to felony murder was objectively unreasonable and deficient. *Strickland*, 466 U.S. at 688.

Failure to request a jury charge on the affirmative defense to felony murder is not prejudicial where the record does not support a reasonable basis for believing that the defendant can show that each element of the affirmative defense can be satisfied. *See Russo v. Keane*, 42 F. App'x 500, 503 (2d Cir. 2002) (summary order) (ineffective assistance of counsel claim based on failure to raise affirmative defense to felony murder failed because defendant testified that he was aware that his co-defendant was carrying a gun, and therefore, could not meet the third and fourth elements of the affirmative defense); *Nuetzel v. Walsh*, No. 00 CIV. 8776, 2006 WL 2742000, at *10 (S.D.N.Y. Sept. 26, 2006) (concluding that the affirmative defense was futile "since the evidence at trial made plain . . . that petitioner knew that Francisco Mendoza had a firearm"); *Green v. Portuondo*, No. 02-CV-4198, 2003 WL 23199872, at *16 (E.D.N.Y. Oct. 27, 2003) (ineffective assistance of counsel claim based on failure to raise affirmative defense to felony murder failed because "[b]ased on defendant's written statements, no reasonable jury could have concluded that petitioner had no reasonable ground to believe another participant in the crime was armed with a deadly weapon"); *Thomas v. Scully*, 854 F. Supp. 944, 958 (E.D.N.Y. 1994) ("The petitioner was not entitled to a jury instruction concerning the affirmative defense to felony murder because "no reasonable view of the properly admitted evidence," would have permitted the jury to find that [defendant] had established the third element of the affirmative defense.").

On direct appeal, the Appellate Division rejected Ms. Johnson's ineffective assistance of counsel claim, concluding that "the trial evidence did not support that affirmative defense." *People v. Johnson*, 184 A.D.3d 1102, 1105 (4th Dep't 2020). This Court agrees. Specifically, there is no reasonable view of the properly admitted evidence that Ms. Johnson would have been able to prove by a preponderance of the evidence the first and third elements of the affirmative defense.

Ms. Johnson argues that because there is no direct evidence of her knowledge of the gun prior to entering the house,  she can assert that she "had no reasonable ground to believe that any other participant was armed with a [deadly] weapon, instrument, article or substance." N.Y. Penal Law § 125.25(3). Even if Ms. Johnson could affirmatively show lack of knowledge upon entering the house and commencing the robbery (notwithstanding the fact that this Court determined otherwise in Section II.2. of this opinion), Ms. Johnson did become aware that Mr. Henry was about to become armed from the moment he asked Ms. Chun for her gun. From that moment, Ms. Johnson had a duty to withdraw from the robbery in order to make out the third element and there is no evidence to suggest that Ms. Johnson did so. Instead, the record shows Ms. Johnson perpetuated the robbery scheme by calling Citizens Bank the following day, pretending to be Ms. Chun in order to continue depleting her bank accounts. *See People v. Jones*, 206 A.D.2d 82, 94 (1st Dep't 1994) (The affirmative defense failed on the third element because of defendant's "continued participation in the underlying crime for some twenty minutes after she saw the gun in an accomplice's hand, as she waited to collect her share of the [robbery] proceeds, belies any claim that she dissociated herself from the crime"); *Davis v. Superintendent, Napanoch Corr. Facility*, No. 89 CIV. 5760, 1990 WL 160883, at *2 (S.D.N.Y. Oct. 13, 1990) ("It can be inferred that there was some delay between [the principal's] retrieval of the gun and his later shooting of [the victim]. Simply put, if there was enough time . . . to flee the scene before the shooting, then there was enough time for petitioner to intercede and prevent the fatal shooting.").

Moreover, Ms. Johnson would struggle to demonstrate the first element of the affirmative defense as well. The jury returned a verdict of guilty on intentional murder as an accomplice and as discussed, *supra*, such verdict was based on legally sufficient evidence. As a matter of law, a guilty verdict for intentional murder as an accomplice means that the jury was convinced beyond

a reasonable doubt that Ms. Johnson aided in the commission of the homicide. See *Supra* at II.2.¶1 ("a person is guilty of intentional murder in the second degree as an accomplice if "when, acting with the mental culpability required for the commission" of intentional murder, she "solicits, requests, commands, importunes, or intentionally aids" the principal in the murder. N.Y. Penal Law § 20.00."). The jury could not then conclude by a preponderance of the evidence that she did not—such a result would be irrational. This result is also supported by the evidence. Ms. Johnson bound and gagged Ms. Chun and persisted in the robbery before during and after the murder. There is no reasonable view of this evidence that Ms. Johnson did not aid in commission of the homicide.

Because Ms. Johnson cannot make out the first or the third elements of the affirmative defense, either of which is sufficient to undermine the defense, she cannot show that her defense was prejudiced by defense counsel's deficient performance. Therefore, Ms. Johnson is not entitled to the writ of habeas corpus with respect to her conviction for felony murder because, although defense counsel's performance was deficient, she was not prejudiced by the deficiency.

## CONCLUSION

Accordingly, Ms. Johnson's request for habeas relief with respect to her convictions for intentional murder in the second degree, N.Y. Penal Law § 125.25(1), felony murder, N.Y. Penal Law § 125.25(3), is DENIED.   Because Ms. Johnson has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.  The Clerk of Court shall enter judgment and close the case.

IT IS SO ORDERED.

Dated: May 24, 2023
    Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York